## PHILA. AND ERIE LAND CO. VS. EARL.

A party who has made a parol exchange of lands, and dedicated what he received to public use can not rescind the contract.

Error to the Court of Common Pleas of Cameron County. No. 149 July Term, 1883.

This was an action of ejectment to recover possession of seven village lots in the Borough of Emporium. It appears in 1860 F. M. Decrano was owner and in possession of a large amount of land, including the land in controversy, situated in the present limits of Emporium, and on Sept. 6th, 1860, conveyed the same to Jay Cooke, by deed duly recorded on April 17th, 1864. The Sinnimahoning Land Company was incorporated, and on April 22, 1864, this name was changed to the Philadelphia and Erie Land Company. On May 10th, 1864, Jay Cooke conveyed the land aforesaid to the said company. In the fall of 1860 this tract was surveyed into village lots and streets for the owner. At that time John Earl had a small lot lying west of this tract, upon which lot he then lived. When the surveying party came upon this lot Earl met them and made an arrangement by which he was to allow them to run the street through his lot, and he was to take other ground in exchange. The surveyors then ran the line of Fourth street and Woodland avenue through Earl's land and the land he was to receive in exchange was staked off. The suit was brought for this land so staked off. The charge of the Court is as follows, per

WILLIAMS, P. J.:

*Gentlemen of the Jury:* This action is what is called an action of ejectment, and the purpose of the action is to obtain from the defendant possession of seven village lots in the Borough of Emporium, which it is alleged the defendant is in possession of without any right to remain in possession; the question for your determination is whether the defendant has shown any right to remain in possession of these lots. A very brief statement of his situation will enable you to understand our answer to the points submitted to us by counsel.

It is alleged by the plaintiff that these lots were surveyed and laid out in the village of Emporium and were enclosed by

Mr. Earl and Mr. Wagner without any title to them or any right of any description that gives them the right to resist this action. The plaintiff shows title to the land and shows by the testimony of two of the defendants, Earl and Wagner, that whatever right they have to this land they claim under the plaintiff. They allege, however, that they have by an arrangement with the plaintiff the right to it, and they allege that the right arises in this manner. It is alleged that at the time the surveyors were here to locate these streets for the owners of the land, they laid out Fourth street. They came to the lot of John Earl, and that the surveyor, or the person with him, proposed that the street should continue through his land, and that the company should give him other land in exchange. It is alleged that he then said to these gentlemen that he would make such an arrangement and take land adjoining him after the opening of the street. Whether such an arrangement was made by the parties alleged to have been connected with the plaintiff, and, if made, whether it has been acted upon by the parties, are questions which have been called to our attention by written points. We will answer them and then see if there is anything left for the jury in this case.

The plaintiff's counsel have submitted these points:

"1st. That the defendants claim, under the plaintiff or its "grantor, and cannot now dispute the title of the plaintiff or "its grantor thereto, but must show a good and legal title "thereto under them."

We affirm this point with the explanation that the words, "good and legal title," do not necessarily mean a written title but mean any such right as is good in law to resist the legal title of the plaintiff.

"2nd. That the defendants have not shown any authority "from the plaintiff or the former owner of the lands in dis- "pute, to Mr. Phelps, Smith, the alleged surveyor, or to any "other person to make the arrangement for the exchange of "land as alleged by the defendants, nor for them or any one "to ratify the possession and selection of the plaintiff's lands "taken and made by either of the defendants."

We think that point is correct as it stands, and affirm it. We do not think authority has been shown in any person to make such an arrangement as is alleged by the defendant here. It is alleged that facts have been shown from which inferences or conclusions may be drawn by the jury and to these we will call your attention shortly, but upon the proposition submitted in this point we say to the jury that we can recall no evidence showing any person to have authority to make the exchange.

"3rd. That under all the evidence in this case the plaintiff "is not estopped from claiming and recovering the land in con- "troversy."

We decline to say that, as a matter of law, but shall refer it as a question of fact to you, with some directions which we feel we ought to give to the jury presently.

"4th. That under the evidence in this case the verdict of the "jury must be for the plaintiff."

We do not take this case from the jury and therefore decline to charge as requested in this point.

Defendants' counsel have submitted the following points :

"1st. That if they believe the land in dispute was seated "and cultivated, or was a portion of a large lot that was occu- "pied as a farm at the time it was assessed for taxes, for the "collection of which it was sold to Charles Hamilton, June "8th, 1846, the said sale was void, and the plaintiffs have "shown no title under which they can recover in this case."

We decline to charge as requested in this point; it is true that the sale of seated lands as unseated would not pass title, but under the instructions we have given you in answer to the plaintiff's first point you will see by a scrutiny of the evidence that the defendants' claim does not reach back of plaintiff's title but is under it.

"2nd. That the plaintiff in this case must recover, if it "recovers at all, upon its own title, and not upon the weakness "of the title of the defendants."

We affirm this point, but we ought to repeat the statement we have just made that in determining the question of title

you ought not to go back beyond the period when the defend-ants' title was acquired.

"That if the jury believe that an arrangement was made "between Earl and the owner of the land in dispute at the "time or previous to the time when the property of Earl was "taken possession of for streets, that Earl was to have land in "exchange for that taken from him, and that he selected the "land in dispute, with the knowledge and assent of the owners "and their agents, as to his compensation, went into possession "thereof and has remained in possession, either by himself or "his vendees, up to the bringing of this suit, that the plaintiff "cannot recover it from him in this action."

The fourth point relates to the same question. The fourth point is as follows :

"4th. That under all the evidence in this case the plaintiff "cannot recover possession of the property in dispute without "first restoring to Earl or his vendees the possession of the "property taken from him."

These points, together with what we have said in answer to one of the points of the plaintiff, raise what we consider the only question in this case for your determination. When one acquires the title of any given thing the circumstances under which it is acquired are always to be looked at, and it may sometimes happen that it is without a conveyance, without any distinct agreement in writing, without any agreement verbally that can be shown in terms between the parties in interest; it may sometimes happen that rights can be acquired and parties put in such a position as that which is known among lawyers and in Courts as raising an estoppel by circumstances, the question in this case is that of character.

Upon the subject raised by these two points we may say to you that these streets to which the witnesses have referred were not laid out by the public. They were being laid out by the owners of the land for the benefit of themselves. You will then look at what transpired at the time the surveyors were here ; you will look at the testimony of Mr. Phelps as to what notice he gave to the then owners of the land, who lived in Philadelphia, as to the arrangement with Earl and their reply

as to carrying out that arrangement; you will look at the circumstances that the President of this company was on the ground the following year and had the opportunity to see what had been appropriated by the company and the land taken in return.

The question you have to determine is whether the company have acquired and still hold this land taken from Mr. Earl by an arrangement such as Mr. Earl testifies to.

If the owners of this land had called on Mr. Earl and said we will give you so much land if you will let us lay out this street, there could be no doubt about the validity of the arrangement.

The difficulty is that the parties were not face to face, and that the parties who came there were not known to be authorized by the company to lay out the streets, they simply asserted that they had the authority.

If you believe that Mr. Earl entered into such an arrangement, by which he agreed to furnish certain land to lay out the street on receipt of other land, and that these parties who made the arrangement, communicated it to the owners and the owners allowed him to take possession of the land in exchange for what they took from him, they cannot withhold from him what he has so taken. And although there was no survey or actual boundaries fixed at the time for the land that he was take possession of, if the owners had knowlege of the location and amount of land that he took possession of and had continued to hold and still continues to hold as his, they cannot recover from him in this action, while they continue to hold the land they so acquired from him.

The question, as you see, for you is first, was there an arrangement made by anybody such as testified to by Earl? Was that brought to the knowledge of the company? Did they subsequently in pursuance of this arrangement and by way of carrying it out take possession of Mr. Earl's land and do they still hold it? Did they know that Earl took possession of this land and enclosed it? If so, we say as a matter of law that the defendant would be entitled to hold posses-

sion of the land so taken by him in exchange for what he surrendered.

If you find adversely on any of these facts, if you find there was no such arrangement, if you find that the company had no notion of it, if made, then the plaintiff is entitled to recover. These are questions purely for the jury, and your verdict will be either for the plaintiff or for the defendants, as you find upon them.

---

The verdict was for the defendants. The land company then took a writ of error, complaining of the charge of the Court, and the answers to the points.

*Messrs. Newton and Green*, for plaintiffs in error, argued that the title to the land was shown in the plaintiffs. There was no authority shown in the surveyors to make the arrangements set up by the defendants. The land company is not estopped; Bispham's Principles of Equity, sections 282, 284, 288, 289, 290, 291; Hill vs. Epley, 31 Penna., 334; Crest vs. Jack, 3 W., 240; Hepburn vs. McDowell, 17 S. & R., 383; Knouff vs. Thompson, 16 Penna., 361; McCormick vs. McMurtrie, 4 W., 195; McKowen vs. McDonald, 7 Wr., 443; Miranville vs. Silverthorn, 48 Penna., 147; Farmer's Bank vs. McKer, 2 Penna., 318.

*J. C. Johnson, Esq.*, for defendants in error, argued that the charge of the Court was as favorable to the plaintiff as it could ask for. Whenever there is any evidence which alone would justify an inference of the undisputed fact, it is given to the jury; Howard Express Co. vs. Wile, 64 Penna., 201. The Court could not give binding instructions; Rhodes vs. Frick, 6 W., 324; Lewis vs. Carstairs, 5 W. & S., 209. Having dedicated this land to public use, as a street, the plaintiff has put it out of its power to reinstate the parties in the same position as they were before, and for that reason cannot recover; Christy vs. Barnhart, 14 Penna., 260; McMahan vs. McMahan, 13 Penna., 376. The parol partition between defendants in common is good; Rider vs. Maul, 10 Wr., 376. The land company is estopped from recovering from the defendants while the land taken by them is in their possession or dedicated

to public use; Martin vs. Ives, 17 S. & R., 364; Beaupland vs. McKeen, 28 Penna., 124; Smith vs. Warden, 19 Penna., 430.

The Supreme Court affirmed the judgment of the Court of Common Pleas on May 26th, 1884, in the following opinion,

PER CURIAM:

The plaintiff seeks to repudiate a parol exchange of lands made twenty years ago. Possession was taken in pursuance of this exchange thereafter, and has been continuously maintained. The land then taken by the plaintiff was dedicated to public use as streets or public highways. It was accepted as such and ever since has been so used. The plaintiff cannot now restore the land thus dedicate l. It is therefore in no condition to rescind the contract. To take from the defendants the lands which they acquired without any return of those which they yielded up would work a gross fraud upon them. The evidence of authority to make the exchange was sufficient to go to the jury, and it was properly submitted. There is no error in the rulings relating to the admission and rejection of evidence.

Judgment affirmed.